The court will proceed to the second case, Kolbe & Kolbe Millwork v. Fireman's Fund Insurance. Ms. Schellinger Good morning. Sue Schellinger for Kolbe & Kolbe Millwork. This is a duty to defend case that is related to the case you just heard argument on. The issue is whether or not a window manufacturer is entitled to a defense from its CGL insurers in a case where the plaintiff has alleged damage to property other than the windows themselves. The key issue here is the meaning of property damage in a standard CGL policy and how that definition may have changed in Wisconsin based on a recent Wisconsin Supreme Court case. Ms. Schellinger, before you dive into that, could you explain to me what is at stake in this case if we were to affirm in the number one case this morning? What would be at stake is a couple of things. Specifically to this case, it would be whether or not there was a continuing duty to defend after the judge's decision or after the March 1 Wisconsin Pharma Call decision. But from a bigger picture perspective, these are standard CGL policies that Kolbe has had in place from 1989 through 2003. This policy language appears in not only Kolbe policies, but all other policies or many other policies. I understand sweeping. It's sort of a Coase theorem problem at bottom, but that doesn't mean that the interim isn't important. But in terms of the stakes for Kolbe, and I understand the stakes would be high if we reverse in the number one case and send it back for more proceedings. But what money is at stake if we were to affirm? Defense costs, continuing defense costs in this case. Are you talking about appellate fees? Appellate fees, correct, what has not yet been paid by the insurance companies. And also to the extent that this case would have a collateral estoppel effect if Kolbe was hit with another similar lawsuit and asked for a defense. Okay, so they stopped paying? Is that right? No, some of the insurance companies have continued to pay. I don't have that with me today, but Kolbe has not been fully reimbursed for defense costs. Okay, thank you. As you know, there are two decisions by the district court in this case on this very exact issue of whether or not there's a duty to defend where there's allegations of damage to other property. The first one was on November 2nd of 2015. And in that decision, the judge went through the traditional policy analysis and concluded that, yes, there was allegations of physical injury to tangible property and there was property damage, so there was a continuing duty to defend. After Wisconsin Pharmacol was decided, there was another decision by the court where she changed her mind and said, no, after this new case, Kolbe no longer has a defense entitlement from the insurers. The judge read the Wisconsin Pharmacol case too broadly. The law did not change as it applies to Kolbe's policy. What happened is the Wisconsin Supreme Court applied a little different coverage analysis where there was a homogeneous product in that case, which was a pharmacy tablet that you could not separate out the ingredients. And the reason you get to that conclusion is by taking a really close look at what the Pharmacol court did. Getting back to the beginning, the touchstone for any insurance policy interpretation analysis is what is the intent of the parties. So in Wisconsin Pharmacol, the court was looking at whether or not there was damage to other property. And the fundamental rationale underlying the court's analysis as to why it was trying to determine if there was other property is because this was a little different case. A homogeneous product such as the pharmacy tablet had not been decided yet as to whether there's property damage in the Wisconsin case. So what the court did, and if you look at the policy, that answer is not real clear from the policy either. So what the court did is went back to what's the fundamental purpose of these CGL policies. And nobody disputes that the risk of these policies is not intended to cover the insured's own product. That is under pretty much every policy excludes that. That's not expected. It's also not intended to be a warranty or a performance bond. So the court looked at that and tried to figure out how does that tie into this where you've got a homogeneous product. And so what the court did is it added this separated out requirement because if you can't separate out the pieces of the final product, there is no other property. And if there's no other property, there's no coverage. Put another way, if you can't separate out the pharmacy tablet, the pharmacal tablet, in essence, if you're asking the insurance company to pay for damage to that product, you are asking the insurance company to pay for your product because your product is included in that pharmacy tablet. You cannot separate it out. So if you'd ask for coverage for that, you're asking for coverage to your product because you can't separate it out. Alternatively, if you can separate it out, you can put aside the different components of the product and you can take a look to see if any of those other components have been harmed. And so the insurance company wouldn't have to pay for your component parts but could pay for the other component parts and there would be coverage assuming that the other pieces of the CGL policy are complied with. Was there an occurrence causing property damage that wasn't excluded? The district judge, if I'm remembering her analysis correctly, said in essence, look, in Wisconsin Pharmacal, we get the introduction of economic loss doctrines, so-called integrated systems niche of the law, right? Right. And then the district judge also looks at Wisconsin law and says under the economic loss doctrine, this integrated system approach has been applied to actually to windows and components of buildings. And if I recall correctly, Bay Breeze and Seltzer, yes. So isn't that the blending of those two streams of authority that was really decisive for the district judge. And in my view, the district judge over the reading of the Pharmacal decision was too broad. Where do you find the limits of Pharmacal? The limits of Pharmacal are in a couple of different places. Number one is the language that they chose to use. You'll see that they talked about cannot be separated out. That was the test that they used, and they used it repeatedly. They looked to only one economic loss doctrine integrated system case, and that was Wausau Tile. And the reason they did that is because that was a homogeneous product, and that was a case where you could not separate out the various parts of the paper block. You couldn't separate the concrete from the aggregate from the water. It was all one, so you couldn't pull it out. Wisconsin Pharmacal did not cite to any other economic loss doctrine case. It cited only to Wausau Tile, and it did not talk about any other test other than the cannot be separated test. And that's really important because if you don't use this cannot be separated out test, then there really is no longer any test for insurance coverage. The other thing that's important that Wisconsin Pharmacal did is it did not overrule American Girl. American Girl has long stood for the proposition that the economic loss doctrine does not control insurance coverage. It is the language of the policy. And, in fact, the court affirmed the finding of American Girl, saying that the economic loss doctrine does not control coverage. Doesn't this appear to be a situation where ultimately the Wisconsin Supreme Court is going to decide this issue? Decide this issue? I think that the Wisconsin Supreme Court has decided this issue as it relates to a homogeneous product. I believe that the Wisconsin Supreme Court has also decided this issue as it relates to a non-homogeneous product. And to do that, I look at other cases that have to be reconciled with Wisconsin Pharmacal, including American Girl, which says economic loss doctrine does not apply. So we don't look to the Bay Breeze and Seltzer cases. So you don't see it's ripe for possible certification to the Wisconsin Supreme Court? It potentially is, Judge. But you also have to, I think the decision is whether or not there's a conflict. And I don't believe there's a conflict. But if this court believes there's a conflict, it should go. The other case that was recently decided by the Wisconsin Supreme Court after Wisconsin Pharmacal is Water Well Solutions. And that's a case where there were two components to what could arguably be an integrated system, which was a well pump attached to a pipe. Those are two components of a system. And what happened is the well pump unthreaded from the pipe fell to the bottom of the well. Those are two separate pieces. In fact, the problem in the case is they separated unintentionally. The court did not look at the separability analysis. It didn't look at integrated system. The reason it didn't is because that is not a homogeneous product case. That is your traditional analysis of you've got two products that are separated. They painstakingly went through the complaint in that case because the well pump damaged the pipe. So they painstakingly went through and said, no, all these parts that the plaintiff is talking about having been damaged is the product of the insured. It's not other property. And it looked through the traditional coverage analysis, is whether there was property damage caused by an occurrence, and then whether there was an exclusion that applies. They're the your product exclusion. The court found the your product exclusion did apply simply because everything in the complaint that was alleged to have been harmed was, in fact, related to the well pump that was supplied by the insured. The other thing that's important in Wisconsin Pharmacol is they cite to the Couch-Thaler case. Couch-Thaler case is a window case. It's a coverage window case cited by the Court of Appeals in 1999. And in that case, the Court of Appeals said that if you have water leaking outside around a window damaging other property, floors and walls, that is an occurrence causing property damage. Wisconsin Pharmacol cited to that case, as did American Girl. So the law of the state is that the water damage causing to surrounding property is covered. The other thing I wanted to mention is what we're really trying to do here is get to the reasonable intent or the reasonable expectations of the insured or what these policies cover. These policies were issued between 1989 and 2004. At that time, the law of the state was really clear, and the language of the policy is really clear. Colby didn't expect that its windows would be covered. That's their product. They wouldn't expect that. But the surrounding damage, they expected it to be covered, because that was what the policy says. That's how the policy was priced and underwritten. And that is what Couch-Thaler said in 1999. So that is the reasonable expectation of Colby, is that this would be covered. Are you saying the Wisconsin Supreme Court's decisions cannot be applied retroactively? I think they can in the right case. Two things, I don't think this would be the right case, because if the expectations and the intent of these two parties to these contracts decades ago was that this property was covered. That also would have been true, though, in Pharmacal itself, right? You could have the same kind of argument made by the insured. Look, we've been relying on these prior cases. You can't change the law. I haven't read the briefs in Pharmacal for a while, but the difference in Pharmacal is there was no case law out there addressing a homogeneous product. Well, my problem, I'm sympathetic to the notion that your client paid a lot of money in premiums for coverage for what looks like the most obvious risk that you all would face in litigation. But I'm troubled by the notion that you seem to be arguing that the state court's decisions could not be applied to the parties before it or to other parties who have been relying on earlier case law. Well, Pharmacal was the first case that talked about a homogeneous product in the context of whether there would be coverage. Let me try to be more specific. Are you arguing that there is a federal constitutional problem with the Wisconsin Supreme Court applying its cases retroactively? I haven't made that argument, and we're not asking the ---- I wouldn't think so. So if Wisconsin's court is applying the law to the parties before it, why shouldn't we? The case doesn't apply because this is not a homogeneous product. Okay. That's a different argument that you've already made. Okay. And I think it's a reliance argument as well. Colby paid for it. That's where I have trouble. Okay. Thank you. Thank you. Mr. Schoenfeld? Good morning. May it please the Court? David Schoenfeld for U.S. Fire Insurance Company. To respond to the Court's question at the outset of prior argument, U.S. Fire has, in fact, continued to pay defense costs in this matter, even subsequent to the district court's ruling. And we do that because under some Wisconsin state law, there is tremendous risk to an insurer who does not continue to pay during the appendix of an appeal. Instead, the insurer's recourse is reimbursement after the appeal is concluded. And that's what we saw here. The district court in this case correctly held that U.S. Fire has no duty to defend Colby in this matter under controlling Wisconsin Supreme Court and appellate court jurisprudence because the underlying complaint does not allege damage to property other than Colby's product. The Court correctly followed the Supreme Court's decision in Wisconsin Pharmacol by applying the integrated systems analysis to this insurance coverage dispute. So when you get away from these homogeneous products, as in Wausau Tile and Wisconsin Pharmacol, what are the limits in this insurance policy interpretation? How do we decide what's connected, what's not, what's integrated? I think that the limits are set forth in a long line of appellate court and Supreme Court decisions in Wisconsin. Under the economic loss doctrine or under insurance coverage? These are economic loss doctrine cases that apply the integrated systems analysis test. Let me address the question. But don't we also have the court saying we don't really want, in Pharmacol, we're not importing all of ELD doctrine into insurance coverage? Absolutely. And that is not required to decide this case. The entire economic loss doctrine does not have to be incorporated in order to decide this particular case. This is a subset. This is an analytic tool utilized by the courts applying the economic loss doctrine, which the court said this integrated systems analysis. That much they were incorporating into insurance coverage law to address this one particular problem, and that is the need to identify when there has, in fact, been damage to other property that would bring the case within the coverage. So is your position basically that Wisconsin Pharmacol embraced all of the integrated systems precedent? That's correct. And if you read the case, there is nothing stating any limit. And, of course, the Wisconsin Supreme Court was well aware of the many cases in Wisconsin jurisprudence that have applied the integrated systems analysis to products and systems that were readily separable. There's a case, in fact, where the language that Colby relies on, the separated out language, first appears in the Wisconsin jurisprudence, at least in my review, at least. It was in a 1999 case, the Mose versus Tedco decision, in which the court ruled that groundwater, contaminated groundwater, cannot be separated out from the land under which it lay. Well, of course, water can always be separated out. You can't pump it out and separate it from the land all the time. This is not a literal statement that these elements cannot be separated. This is an analytic reference. The court is saying that analytically these components cannot be separated for purposes of determining whether there's been damage to the entire system or simply to the product, more than the product at issue. You see this integrated loss doctrine thus applied in a variety of situations where the insured's product is much more readily separable from the integrated system than even the windows at issue here. You have it in the case of replacement parts. You have it in the case of tail rotors on helicopters, which are routinely switched out and replaced. The court was well aware of this line of cases and stated no limit in its adoption of the integrated loss doctrine. Another important point with respect to separate it out, the Supreme Court in Farmacol noted expressly in paragraph six of its decision that Wisconsin Farmacol had conducted chemical testing to identify the incorrect ingredient that had been incorporated into these tablets. Well, of course, to separate, to do that analysis, a chemist had to separate out the offending material. So even the Supreme Court was not suggesting that this was a literal impossibility to separate out the products and that that was some limit on its analysis. What it was saying was that this is an analytic issue, whether or not these are separable for analytic purposes in determining, as the court put it, what should be deemed to be damaged to other property. Mr. Schoenfeld, let me ask you to address something I raised a little earlier, and that is my concern is that it has to do with the original pricing of this policy under Wisconsin law that would have produced a different result here, and the risk of lawsuits like the Haley lawsuit looks like the main risk that a company like Kolbe would want to insure against. Not necessarily. I mean, there are substantial other risks that would remain to be covered. First of all, if you had any sort of an own work issue, that would not be considered a work issue. Nobody thinks this covers Kolbe's own work. Right. Well, but if you – this would not affect the – if you had the damage from the work to other property, this would not – Well, that's the shattering glass destroying the Picasso hypothetical, right? Well, you have to – But if you – if damage to the rest of the building isn't covered, what are the big risks you're covering them against? Well, again, I think there are a number that would fall within the category, I mean, the shattering of the glass and the damaging of Picasso, which, of course, comes from Wisconsin law, is just one example. You could have a number of things where – Please. Could fall and damage injured people. You could have a number of things I think could be affected in other circumstances. Premiums here were what, in the hundreds of thousands of dollars per year? I don't – I can't answer that question. I've seen 327,000. I've seen 600,000. What were they getting for their money under this approach? There are other risks that are covered that are not even the product liability risks, such as they may have had – I didn't look at the entirety of the policy, but oftentimes there may have been employee claims. There may have been environmental claims and those sorts of things. They're all part of a package product. So it's not necessarily the case that even the product liability risk is the only one insured under the policy. I guess I'm waiting for you to explain to me why this was a fairly priced policy. Well, I think it's not correct to look at the particular loss that's occurred here. I'm not. I'm talking about this as the main – what seems – and maybe this is hindsight bias. I'll grant you that. But I'm asking you to give me something else. Well, so Colby is a manufacturing entity. They dispose of waste. There may be environmental risks. There could be risks involved in their premises operations. We had a whole range of risks that may be covered under the U.S. fire policy that would not be affected by this ruling at all, and yet would still be substantial risks that would be insured under this policy. So I don't think it's correct to look at one particular loss that the Supreme Court has ruled is not covered and say, well, that makes the policy an unfair or illusory policy. Is this a standard provision in companies like yours that insure? Yes, these are a standard policy language generally. So if the Wisconsin Supreme Court had been a little bit clearer, your policies probably would have changed to reflect that, right? Clearer, so it's not as broad as it appears to be. Policies, policy language does sometimes change to react to decisions made by the courts. This is a recent decision, so it would not necessarily. But that's generally the situation. That is the process by which. Having done this before and tried to guess the state Supreme Court and been wrong, I understand how it works. That is the process by which the industry adapts to developments in the law, and in this instance that could well be a development that would take place in the marketplace. But that, I think, is not a reason to refuse to follow the clear law established by the Wisconsin Supreme Court and the Wisconsin Appellate Courts. Mr. Schoenfeld, can I ask you a couple of questions that relate both to the main case and to your cross-appeal? If I understand this correctly, it took you all quite a while to decide to defend, correct? How long did that take? It was several months. Close to a year, wasn't it? I actually was not involved in the case at that moment, so I don't recall. That's kind of important, isn't it? It is. And would you agree that at the time the defense was tendered, the duty to defend, to defend, to identify, we'll put aside, but a duty to defend was clear under Wisconsin law. We brought a motion. The court denied it. I think that that circumstance existed at that moment. You brought a motion to determine whether you had to defend? Yes, yes. And the district judge said it did, right? That's right. Okay. In your, the reservation of rights letters from your insurer and others in the record here? I believe that they are, but I can't. Any idea where? I can't give it to you. I'll have to submit that. And do those reservation of rights letters assert a right to claw back defense costs? Yes. And yet you also insisted on the right to control the defense. And that's a normal part of it. I know that's a normal part, but when you're complaining, when you wait for a year, or nearly a year, before defending somebody who's facing bet-the-company litigation and then want to throw out the law firm that's been defending them, that's a pretty unpalatable way to deal with your insurers, isn't it? Well, we did pay the cost of that defense. I know you did, under court order, right? Once the court ruled, yes, we did. We addressed a couple of the cases that were cited by Colby to try to distinguish the application of Wisconsin PharmaCorp. The first of those is the American Girl decision. This case was not a product defect case. It did not involve an allegation that the insurance product was integrated into a damaged product. In fact, it addressed the separate and entirely different question of whether there was an occurrence due to the application of the economic loss doctrine. None of those issues are dispositive in Wisconsin Pharma. They don't distinguish Wisconsin PharmaCorp from American Girl. Similarly, the Waterwell case, again, there was no allegation in that case that there was an integrated systems issue or any issue with respect to damage to other properties. Colby acknowledges both the pipe and the pump that were at issue. They were provided by the same insurer, and therefore there was no issue of any damage to other property, and so the integrated systems issue did not arise, and thus there was no reason to assess whether there was an occurrence. And finally, with respect to the Cocktailer case, Colby concedes this case is distinguishable because it involved damage to property other than the home, such as draperies. It also involved a fundamentally different issue, and that is whether the damage that occurred in that case was an occurrence under the policy and not whether there was damage to other property, which was the issue in Wisconsin PharmaCorp and is the issue in this case. If I could just, your red light's on, but I'd like to just quickly ask you to explain to me why you think March 1st of 2016 is so significant with respect to your duty to defend since we are still debating the effect of Wisconsin PharmaCal on both indemnification and duty to defend. Well, because that was the date on which it was clear under Wisconsin law that we could have a... According to you, but we're still debating this. I just don't understand why that's such a watershed date for you. Well, because if the court agrees with us, then that was the date on which we had no duty to defend. That doesn't make any sense to me at all. Because the duty to defend is determined under Wisconsin law. The law became clear on October 1st, there was no duty to defend. Well, you're saying the law is clear. I'm suggesting there's room to debate. Obviously, the district judge had to look at it. But there certainly are decent arguments on both sides about the scope of Wisconsin PharmaCal. So I would think that question is not resolved until the final resolution of this appeal. Well, I would submit that the correct way to analyze this is to look at whether or not... An insurer should not have to pay money that was not owed under Wisconsin law simply because it takes some period of time to determine what its rights were under Wisconsin law. There are procedures that the courts have adopted, particularly the federal courts in Wisconsin, which provide for reimbursement of monies paid out in good faith by the insurers to maintain the status quo during that interval, but they're still entitled, their recourse is still to obtain reimbursement back to the date when there was no duty to defend. What if it had been an intermediate appellate court in Wisconsin rather than the Supreme Court? Well, I think that the district court would have been obligated to follow that and... So the thing would still be the same, you're saying? That would be my position, yes. All right. Thank you. All right. Ms. Berger? Good morning, Your Honors. I represent Fireman's Fund Insurance Company. Fireman's Fund is an intervener appellee, and we principally join the arguments of U.S. Fire with respect to the appeal by Colby of the district court decision. There is one distinction between U.S. Fire and Fireman's Fund that was made just on the brief on appeal by Colby, and that is Colby's argument that Fireman's Fund is situated differently because there is an exception in your product exclusion in the Fireman's Fund policy that is not found in the U.S. Fire policy. Fireman's Fund believes that that argument has no merit for two reasons. Principally, what we raised in our appellate brief was that neither the pharmacal decision nor the district court relied on the exclusions to support its decision that there was no property damage at issue in the case. The court applied the integrated systems doctrine to the scope of coverage in the policy for property damage and did not go to the exclusions to support its decision. However, Colby wrongly states in its reply brief that Fireman's Fund conceded the issue that were the exclusions to be applied, that somehow Fireman's Fund exclusion would be interpreted differently than U.S. Fires, and that's simply not accurate. The exception that Colby refers to is the use of the word real property in the definition of your product. However, in this case, the real property, there is no real property. There is windows, which is a product, and it's not considered real property. There are several cases I could cite the court to. The first one is the Wisconsin Court of Appeals decision in B&D Construction v. Arwin. In that case, the court used that same exclusion with the same definition to say that the exclusion applied to windows. So that was exactly on point here. There's also a case in Louisiana, McMath Construction v. Glenn DuPay, 897 South 2D 677, where the court also applied the exclusion in a case where there was an exterior stucco system. And then it actually explained that even though it was incorporated into real property, that exception wasn't meant for incorporation of products, even if they're incorporated into real property. Are those cases in your briefs? They're not because we just argued that that distinction wasn't made by the court. The court never looked at the exclusion. So we never said that we conceded the fact that the exclusion would apply. They just said that in their reply brief. So, no, we didn't address that because we said that the district court. If you want us to look at those cases, could you at least give us the citations? Yes. So the first one is B&D Contractors v. Arwin. That's 2006, Wisconsin Act 123, Paragraph 7. That's the Wisconsin Court of Appeals case. The Louisiana case is McMath Construction Company v. Glenn DuPay, and that's 897 South 2nd, 677. And that's the case that explains that defective material incorporated into real property isn't intended to be part of that exception. And then the last one is Lee Builders, Inc. v. Farm Bureau Mutual, and that's 104P3D997. And in that case, the court at length explains that that exception was meant for contractors and builders and not in a situation where you have a product manufactured. And I could also submit those cases to the court. I think you should do that. I will do that. Within the next five days. Thank you. All right. Thank you, Ms. Berger. Ms. Schellinger, your time had expired, I think, but you may have an additional two minutes. Thank you. I appreciate that. The pharmacal court did not adopt the integrated system analysis from the economic loss doctrine. It did not say all of these cases that applied in a different context now apply to insurance coverage. They didn't say that. If they meant to do that, they would have said it because that would be a huge change in the law. They didn't do that. What they did is they used the separability analysis from one case that had a homogeneous product to try to figure out whether there was property damage in a case where there is a homogeneous product. You have to look at the fundamental reason that they did that and the rationale for their decision. And that is to make sure that the insurance company is not paying for your product. Because if your product is inextricably intertwined with others, you can't separate it out. So the insurance company would have to end up paying for your product, which flies in the face of the hundred Wisconsin cases that say CGL coverage is not a warranty bond. What the Wisconsin Supreme Court said is that American Girl still applies, which means that the economic loss doctrine does not control coverage. The policy language does, which takes me back to what we're trying to do, which is to figure out what's the reasonable expectations of the insured. Should we give the Wisconsin Supreme Court an opportunity to say what they meant? That's a possibility. And we've asked for that in the alternative. But in my view, you can read Pharmacol pretty clearly to be very limited to the homogeneous product. So we ask the district court be reversed on that issue, or alternatively, if it's not as clear to this court as it is to me, to send it up to the Wisconsin Supreme Court. Thank you. Thank you, Michelle. Thanks to all counsel. The case is taken under advisement.